Good morning and welcome to the Ninth Circuit. A little housekeeping before we hear the two argued cases. Hatfield v. Berryhill submitted on the briefs. Runfoe v. Citibank submitted on the briefs. G.O. American Shipping v. China Costco Shipping submitted on the briefs. We've read your briefs and we look forward to your arguments when you're ready. Thank you, Your Honor, and good morning. Robert Powell on behalf of the petitioner, Mr. Francisco Vega. In this case, I would like to reserve three minutes by way of rebuttal. In this case, ICE is attempting to deport Mr. Vega for an offense that was committed over 30 years ago when he was 14 years old. He was arrested for possession of a controlled substance, cocaine. That arrest resulted three years later when he was 17 years old in a conviction. That conviction has been expunged and it's the sole basis for the order of deportation that ICE is seeking to reinstate. Can I stop you right there and forgive me for interrupting, but right there my timeline's messed up because there's records, ROP 25, that says that he was convicted in 99. And it looks to me like that's a typo that's a repeat of an earlier typo from AR 30 that said he was convicted of 11-350 in 1999. Shouldn't that be 1991? That's correct. That is a typo there. One charge, one conviction. There's just one conviction. Was he arrested twice? One for possession for sale and one for possession? No, there was just one. There was the one arrest. But there's discussion of possession for sale, too, right? There may have been some discussion of that. When he was arrested, he may have made an allegation that it was a sale involved. But, sir, I can't see that anywhere in the arrest documents, in the court documents. I see that transposed in the same document that I think Judge Callahan's looking at where there's a typo with the date. Do you know of any court document that mentions any charge of sale? No, no. The court documents are for possession, simple possession of a controlled substance. Okay, so... There's no court documents in the record that would reflect a sale. You brought up Judge Callahan, and I think I just did. Is there... You don't have any court documents as possession for sale? Correct. All right. What is the status of his U visa application? That's been denied. And that's why? Yes. There was so... The Immigration Service was requesting a waiver that was necessary in order for the U visa to be approved, and the Immigration Service denied the waiver request. Is that on appeal? It was, but it's been denied. Okay. So the U visa is not in play at this point. So does he have any... All right. Does he have any hope for any legal status? Well, yeah. I mean, we believe that the prior order cannot properly be reinstated. That means that the Immigration Service, if they want to take further action against him, would have to initiate removal proceedings in front of an immigration judge, and there he does have defenses. Could I ask you about the reinstatement? My understanding is that the agency has a lot of discretion when it comes to reinstating a prior order of removal, and that they're required to look at, I'm going to paraphrase, all of the facts and circumstances or something like that. So I have a question about the A file, because both briefs make representations without citations to the record about what was or was not in the A file, and in particular the July 2014 letter, which had attached to it the, I'll call it the expungement. When did that show up in the A files, my first question? Was it there before July of 2014? Yes. There was a, so the A file, so first of all, the administrative record that we have here, I think it's docket four and docket five, are really abbreviated records that were prepared by, well, the relevant one here I think is docket five, which is the record relating to the reinstatement. Right. At that time, the administrative record available was the complete A file, or what's called the alien file. Yes. In that record, which is a very big record, would include, now with respect to the question about the expungement document, in, I believe, in November of 2013, so prior to the reinstatement, Mr. Vega's prior counsel, Amanda Stevens, filed a motion to reopen, and in that motion to reopen she included evidence that the conviction had been expunged. So that document. When would the agency have received that, sir? They would have received that shortly after. So when that's filed, there's a copy that's sent. Can you give me shortly after, what year are we talking about? So November 2013 is when the. Okay. I need to ask a few basic questions. Sure. Forgive me, and you're invited to respond when you come to the podium. I'm not sure I really know what an A file is. I don't know where it lives. I don't know if it's electronic. I don't know if you had access to it as well as the government. Could you give me a primer on A files in one minute or less? Yes. Okay. Well, let me interrupt for just a moment. You're set for 15 minutes. You want to reserve some time. But if we need explanations, don't worry about the time. Just say what you need to say, and we'll make sure that you get time to say it as well as you. Okay? Thank you. A kind presiding judge today. Okay. I'm listening. Okay. So the A file is the official agency file maintained by the Department of Homeland Security relating to the noncitizen. Yep. In there, all of the relevant record, you know, applications, for example, will be filed in that record. In addition, documents that are filed with the immigration court are copied to the ‑‑ well, they're copied to the counsel for the immigration service, and then those documents would, and quite frankly, I can't say consistently or uniformly, but those documents would typically be filed in the alien file. So when in November of 2013, when Amanda Stevens filed this motion to reopen, she sent a copy with the expungement document. She sent a copy of that to the counsel for the immigration service, and then that document should have ended up in the alien file, in the A file. Okay. I would point out that, you know, there are documents, for example, in docket 5, which is the administrative record created by the ICE officer, there are documents in there, excuse me, documents from the ‑‑ that were filed with the immigration court that did end up in the alien file. So, you know, we know generally speaking documents that are filed with the court will end up in the alien file. Okay. And so is the alien ‑‑ where does the alien file live? Is that an electronic record? Or are you the wrong person to ask? I'm not sure. Okay. Well, you just used the word document, what his prior lawyer filed in the litigation, I'll say. You think that winds up in the A file, although perhaps not entirely consistently. So perhaps opposing counsel, when he comes up, could let me know whether the A file is electronic and who has access to it. It sounds to me like, sir, like you don't. Yeah. Counsel petitioner would not, but the government counsel would. Is that right? Yeah. What I do know is that, you know, the reinstating officer would have access to that A file. And you know that because? Because there are documents in that are pulled out, that are put in docket 5, the administrative record that we have that come out of the A file. Okay. So what evidence in the record supports your argument that you validly raised in the administrative proceedings below your arguments relating to the conviction being vacated in 1999 and to your application for adjustment of status in 1997? So with respect to the reinstatement decision, that was made by the immigration, the ICE officer in, I believe, February of 2014. At that time, the immigration officer has the A file available to him or her and reviews that file so that expungement document would have been available to him or her at the time that the decision to reinstate was made. Well, excuse me, right there, to answer Judge Callahan's question. That you raised it. Why? That it's not, that this has been exhausted, that you're not raising these arguments for the first time on appeal. That you validly raised in the administrative proceeding below your arguments relating to the conviction being vacated in 1999 and your application for adjustment of status in 1997. So in July of 2014, after the reinstatement, we counseled Theria Orr, filed a motion to reconsider making those arguments, putting those arguments explicitly in front of the immigration officer, the ICE reinstatement officer, and asking the officer to reconsider that decision in light of the expungement. So one step earlier, though, a minute ago, I thought you answered in response to one of my questions that the previous counselor for petitioner raised this because she attached it to her motion in 2013. Correct. Okay. And then that document was or should have been in the A file. So my question, forgive me for interrupting, but my question, I really need to get this. Is it your position that as far as you know, the first time the government knew about the expungement was when she filed her motion in 2013, is that right? Yes. Okay. November 2013. November. Okay. Thank you. Yeah. Yeah. So if you just get something expunged and it's for rehabilitative purposes alone, that doesn't, you're not home free. So the expungement is, I think, very clearly effective for immigration purposes in light of the Lujan-Arandara's decision. Well, does Vega Anguiano satisfy the First Offender Act? Yes. That was his first offense. Well, but there's mention in the record of something for sale and then simple possession, and he also violated his probation. You can't violate your, I mean, the exception to just expunging things, you have to, the First Offender Act is the exception, right? And I'm having a hard time figuring out how he would qualify under the first offender because it seems that he violated, he immediately returned. So the chronology is in September of 1991, he was convicted for that offense that happened three years earlier. And then at that point he was convicted. That was his first offense. And his only offense. You cleared up that. That was one question I had as well. It looked to me like there may have been two offenses. It sounds like maybe not. Right. There were not two offenses. What about the probation violation, to follow up on Judge Callahan's question? Yes, I believe. So he was arrested when he was 14 years old. I think they told him to, there was not a conviction at that time. They may have done some, they told him to go to probation or go to some classes. He apparently missed some classes and then was. And what was that arrest for? Which arrest? The 14-year-old arrest, when he was 14. That was for possession of cocaine. For sale. Well. It indicates 11350 consistently. 11350 is possession. The charge was 11350. That what he was arrested for? That's what he was convicted of? He was arrested. Well, at the time of the arrest, there may have been some talk about his, about a sale. But that's not what was charged and that's not what he was convicted of. He was convicted of simple possession of controlled substance in September of 1991. So there shouldn't be any question but that he satisfies those requirements for an expungement to be effective under Lujan Armendariz. If you violate your probation? Any probation violation happened prior to the conviction. So the. Well, what about the fact that he, after he was removed, he immediately returned? That happened in 2008 after the expungement occurred. And so after that conviction was off his record. So any violations after that would not affect the effectiveness of that expungement. My guess is, and you may or may not be in a position to know the answer, but my guess is that the time lapse between the crime when he was 14 and the conviction three years later is explained by the state He couldn't decide whether to charge him. And he did something like miss the classes, which then triggered the criminal proceeding going forward. Yes, I don't think the record is entirely clear about that. What is clear is that there was one charge brought against him was in September of. Well, the charge that he pled guilty to September of 1991. That was the first conviction for simple possession. And I don't think that any misbehavior, if that's the right word for it, between the time of the arrest and when he was 14 and the criminal charge being brought, I don't think that interferes with relief under the first offender act. Correct. That's my understanding as well. What was the misprision of felony? That occurred, I believe, in 2012 or 2013. What was that for? It was for he was gaming as an animal fight, a cock fight. OK, that it was out of that charge. It wasn't out of. So he has four citizen born children. Correct. But he was with the same woman for a long time, but then he married her. Yes, he's been with this woman. In fact, he was 20 years later or something like that. Yes. In fact, the original I-130 petition that was filed so that he could adjust his status was filed in 1990. I believe 1993, 25 years ago or so. So what happened? Then there was like kind of a 14-year period where he didn't do anything until he got arrested again. And then he's, you know. And then, yes, when after that arrest, then his prior counsel, Amanda Stevens, filed a motion to reopen, which was denied. And then the. Untimely. Sorry? As untimely? Yes. Denied as untimely, OK. Yes. And then, you know, then the Immigration Service reinstated the prior order of removal. So what do I do with the 14 years where he did nothing? Well, I don't think that's really relevant with respect to the issue about reinstatement. The reinstatement, we think it's clear under board precedents that the reinstatement is not proper where the underlying order of deportation has been deprived of a legal basis. That's quite clear under the board precedent cases, Farinas and Malone. So at the time that he was deported, had it been expunged? At the time that he was deported in 2008, the conviction had already been expunged. It was expunged in, I believe, 2000. 1999. 1999 or 2000, yes. But anyway, it doesn't matter. I shouldn't quibble. To Judge Callahan's question, the answer is it had been expunged. And what? Is the position that there was a mistake, they didn't know it was expunged? Yes, they were, I suppose, a mistake because he was deported at that point when the order of deportation had already been deprived of the legal basis and should have under Lujan and this court's unbanked decision. So just summarize to me your best argument when you wait that long, how you can attack something collaterally, essentially. I think Farinas is the case that really explains best why. In Farinas, and interesting, Farinas is also a reinstatement case. The government was trying to reinstate a prior order of removal that had been subsequently found not to have a legal basis. In Farinas, the respondent, or Mr. Farinas, had been convicted of a crime, and then there was an order of deportation in November of 1946, an order of deportation against him based on that conviction. About a year later, the Supreme Court, in the DePasquale case, issued a decision that made it clear, and then the board said, at that point, the order of deportation no longer had a legal basis for it. At the time, he was still serving a sentence for his conviction, and a couple years later he was deported from the United States. About 16 years later, he came back into the United States illegally, and then the Immigration Service was attempting to reinstate that old order of deportation, and the board said, well, even though that order of deportation might have been valid at the time the immigration judge entered the order of deportation, the subsequent developments that happened before he was deported made that order lack a legal basis. It was no longer effective. And therefore, at the time that he was deported, the deportation was without a legal basis, and therefore the Immigration Service cannot reinstate that order of deportation. So I think Farinas is really on all fours in this case. Like in this case, there is an expungement prior to the deportation that deprives the order of deportation of its legal basis, and so he was deported at a time when he was not really deportable, and therefore under Farinas that order cannot be reinstated. Okay, we've taken you over time. Let's hear from the other side, and then we'll put three minutes on the clock for rebuttal. Thank you. Good morning. Good morning. May it please the Court. Todd Cochran on behalf of the Attorney General. The Court should dismiss the petition because it lacks jurisdiction to review Mr. Vega's collateral challenge to his long-executed removal order pursuant to 8 U.S.C. 1252, which requires the petition to be filed within 30 days of a final order of removal. Could you talk a little more slowly? Yes, Your Honor, of course. Mr. Vega failed to appeal the immigration judge's decision in 1998 to the Board or to seek review. He cannot do so 20 years later. In the event the Court determines it has jurisdiction, Mr. Vega's claims fall short because he cannot demonstrate a gross miscarriage of justice, thereby allowing him to collaterally attack his previously executed order of removal. Now, do you contest what we just heard, that at the time of his deportation, there was no longer a valid basis for that deportation? I do contest that, Your Honor. What's the basis for that contest? It appears that the conviction that underlined the removal order was expunged in 1999. However, as the Court pointed out, Mr. Vega never notified the agency of that until 2013. I'm not asking about notification. I'm asking about was there a legal basis, assuming that there had been notification. That is to say, notification only tells you there's no legal basis. So I'm asking you, was there no legal basis? There was a legal basis, Your Honor. When the agency looked to reinstate the original order, the agency looks at three things. They look to see if it's an alien. I'm not asking that. I'm asking you a different question. Okay. We were told by your colleague on the other side that when he was deported, the conviction had been expunged, and that conviction had been the basis for the deportation order. Now that the conviction is expunged, according to your colleague, that means there's no legal basis for the deportation. How do you respond to that? I believe that there is a legal basis still for the deportation, because although the conviction may have been expunged, he never pursued any sort of FFO relief or anything with the agency to notify the agency. So the DHS officer goes and looks to see. So your argument is that if someone had pursued it at the time of his deportation, the deportation would not have been valid? That's possible, Your Honor. It's also possible, as Your Honor pointed out, it appears there may have been a second controlled substance conviction in the record. Wait, wait, wait. Hold it right there. Yes. A minute ago you said it may have been expunged, and these are kind of related because I want to make sure I'm not missing something. Do you have any reason to think it wasn't expunged? I do not, Your Honor. I misspoke on that. No, no, no. It appears it was expunged, as far as I can tell from the record, yes. That's all I need. And then the next question. Okay. Do you have anything? I want to hear him to follow through on the FFOA, too. I want to hear how that, in your view, factors in. Yes. I can wait on my question. Go ahead and answer, Judge Callahan. On the FFOA issue, it is a federal or a state rehabilitative statute. He needs to pursue that relief with the agency to notify them of that. Ramirez-Altamirano 563F3812, he has to show, one, it was a first offense. Second, he had no previous first offender treatment. Three, it was only for possession of a controlled substance. And four, that he obtained relief on the state rehabilitative statute. He never showed that to the agency. He never raised the issue about the expungement until his motion reopened in 2013. In that motion, he sought to pursue an ineffective assistance of counsel claim against his previous attorney, who untimely appealed the original order in 1998-1999. Counsel points out that he attached the expungement documents to that motion. The board did not rule upon that. They denied the motion on due diligence grounds related to the ineffective assistance of counsel claim. Mr. Vega pursued a petition for review with this court, and this court denied the petition to due diligence grounds. He did not appear to have raised the expungement. Can I interrupt for just a minute? It sounds as though so far your argument as to why he doesn't qualify under the first offender provision is that he didn't pursue it. Correct. Do you have any other argument that is to say had he pursued it, did he qualify? No, Your Honor. He did not pursue the FOA treatment. You're not answering my question. If he had pursued it, would he have qualified? That's my question. If he had pursued it and he had made the showings that he has to show, it is possible, yes. You're dodging the question because you said if he had made the showing, he had to show. Knowing what we now know, if he had pursued it with what we now know, would he have qualified? That's a difficult question to answer, Your Honor. Well, okay, but that's the question I asked. What prong is it that he wouldn't have qualified for? I'm really trying to understand which one he wouldn't have been able to tick off. Well, I don't dispute that he would have qualified, likely would have qualified for it, but the point is he did not exercise due diligence in pursuing that. He never raised that issue with the agency until 2013, which is some 15, 20 years later after he actually received the expungement. Is it a burden issue to you? Yes, Your Honor, and he sat on his hands after it was expunged. He remained at liberty in the United States under a final order of removal that he didn't pursue rehabilitative relief, notifying the agency, until he was removed. He illegally reentered, remained in illegal status for a number of years, and then in 2013, around the time that he was arrested for the cockfighting incident and convicted of the misprision of a felony, he then pursued the motion to reopen regarding the ineffective assistance of counsel claim and appeared to append the expungement documents at that point in time. The board did not rule on the issue regarding the expungement. He filed a petition for review with this court, did not raise the board's election to not rule on the expungement issue that he didn't raise in his motion. In the government's position, for the most part, I just want to understand this, that if you sit on your hands, if you don't meet your burden to show that something's expunged, then you just can't come in that much later when you come to the attention of the authorities and you've been here illegally all of that time. You just don't get to attack it. Yes, Your Honor, particularly when he didn't do it in a timely fashion. What about the case that counsel for petitioner cited that he said was on all fours? What's your response to that? I think he said, is it Farias, something like that, that he just cited when he was up here? I am not familiar with that case, Your Honor. Can I ask just a moment, a little bit out of order? Is that case in your brief?  Okay, so it's in the brief. Well, one, that would be a board decision, so it wouldn't be binding upon this court, but other than that, I apologize, Your Honor. Counsel, I have a question. Maybe this gets back to what I'm hoping to leave the courtroom with, which is an understanding of the A file. Your position in response to Judge Callahan's question has a lot to do with this individual not raising the expungement, not raising the arguments and whatnot, which I appreciate. I'm trying to figure out how we know that's right. Can you tell me, what's the A file? Where is it? Who has access to it? That's a good question, Your Honor. The A file is something that the Department of Homeland Security maintains. I, myself, as the lawyer for the DOJ, I have never seen the A file. Don't look at it. I do not look at it, Your Honor. You are not the first DOJ guy to tell me he's never seen the A file. We're consistent, Your Honor. Well, actually not, but you're not the first. So how does it work? Because I truly appreciate all the effort you put into this case, but how is it we know he hasn't raised this stuff? And I understand the burden argument, but then I get all the way down to the end of your decision tree. As I read your decision tree, I said earlier, I think the agency has a lot of discretion to reinstate a prior removal order, but there is a requirement that they consider all the circumstances. So where does it happen that somebody looks at the A file and may have realized, oh, there was an expungement here? How does that work? Well, as Your Honor pointed out, the immigration officer takes a look at the file when they're assigned to reinstate. Okay, I did not point that out because I did not know that, but, okay, it's the immigration officer? Correct. It's the asylum officer, which is what it's called. Okay. And DHS has discretion, as Your Honor pointed out, to decide to reinstate a prior order of removal, or they can elect to, for whatever reason, we're going to put the individual back in regular 240 proceedings so they have a hearing before an immigration judge, and they can apply for relief. In this instance, DHS looked at the file, and they're looking for three issues. I know. Okay, but when did they look at the file? When they're deciding to reinstate. When? In this case, sir? That was in February of 2014. And how do we know what was there? We don't. Because it's not what I would have thought I might have seen in the excerpts here is something indicating, you know, we considered it. Yes. I don't have that. Well, the asylum officer is supposed to consider the entire file, as Your Honor pointed out, when they're deciding to reinstate. But we don't know what was in the file, sir, because we have a case that has dragged on for a long time, and there were other lawyers who did or did not file things in the correct place or not. And so that's what I struggle with. How do we know somebody took a step back and said, oh, here's what happened. There's a conviction many, many years ago, one, not two, because the government, I think, did typo it and maybe had the misunderstanding as we had or were trying to figure out whether one or two criminal charges. There's actually just one, I think, pretty clearly, and so on and so forth. But I don't know whether there was a human being who pre-reinstatement had an opportunity to see this file. Well, that's what the asylum officer is supposed to do, is review the file when they're deciding whether to reinstate or not. And they issue a notice of intent to reinstate to the individual, to Mr. Vega in this situation. He has an opportunity to provide a written or an oral statement at that point in time, providing evidence or providing a statement as to why he shouldn't be reinstated. He declined to do so at that point in time. Actually, but he went with a handwritten letter that his lawyer prepared for him to his credible fear determination saying, please include this. This guy's conviction has been expunged. Yes, that postdated the decision to reinstate by five months. And so, which gets me back to the question, is there some time limit by which he has to say, hey, raise his hand and say, this was expunged, or where do we look for that? I don't know if there's a particular time limit. He had opportunities for many, many years to file something. He waited until 2013. What is the reinstatement and the time that he's reinstated? He raised it during that window. I'm just trying to – your position is that he raised it too late. Yes, he raised – the expungement he filed in the motion to reopen in 2013, as we've discussed, regarding the ineffective assistance of counsel claim. He just attached the documents. He doesn't make an argument about that. He didn't pursue that issue before this court. Attached the expungement but didn't argue it. Is that your position? Correct. In 2013? Yes. Although that does not appear part of the record, so. Well, wait a minute. What record? Are you talking about the A file? Well, it sounds to me like as of 2013 the government had in the A file, pursuant to his former counsel's motion, record that the conviction had been expunged. Now, I really want you to correct me if I've got that wrong. I don't know for certain. I presume it would be in the file, and there is a presumption that the agency would discharge its duties fully and they would review the entire file, which likely included that motion to reopen. So that information should have been in front of the government agent making the decision. It should have been, yes, Your Honor. The file would have been radically incomplete if that information was not in the file. Potentially, yes, Your Honor. What do you mean potentially? It should have been in the file, yes, Your Honor. It should have been in the file. So let me repeat what I said, and then you can say potentially or not say potentially. The file would have been radically incomplete if that information were not in the file. Now, do you want to say potentially or not? No, Your Honor. I believe it would be incomplete, yes. Okay. So is there any way that this petitioner can get relief at this point? He doesn't have a pending U visa at this point. He was denied that, right? That's my understanding, yes. So is his only way he can get relief is he has to attack this reinstatement and have that vacated, and then he starts all over again? Yes. Then he would have an opportunity to go into regular 240 proceedings, present his claims for relief, whatever he may want to pursue. He didn't really challenge the credible fear here, right? Not. So he can't do that again, right? Not in this proceeding. So what basis does he have to get legal status if he can get rid of this? I don't believe that he does, Your Honor. He was found originally removable and ineligible for adjustment of status because of the controlled substance conviction from 1998. If that's expunged, he gets this proceeding here terminated. He goes back before the agency. He can reapply again for adjustment of status. But he has other problems then. He has this misprision of a felony conviction, which, you know, neither the agency has ruled on that. That may make him ineligible as well for adjustment of status. So I don't know what avenue of relief he might have. Was that dismissed, though? No. The misprision of felony? No, he was convicted of that and sentenced to five and a half months. He was originally charged with a number of other things, I think an unlawful animal fighting venture and a couple of other things. So that got convicted and then he was, I mean, that got dismissed pursuant to the conviction of his prison. Yes, and he was convicted of the misprision of a felony. Is misprison a disqualifying offense? Would that disqualify him for relief? I do not know the exact answer to that, Your Honor. That's something the board would have to opine upon first. I think it's likely because of the nature of the conviction. It could be an aggravated felony or a CIMT or something that would make him ineligible. At this point, I heard your honest answer. You don't know at this point? I don't know, Your Honor, yes. No, nothing further. Thank you. The court should dismiss the petition for lack of jurisdiction because Mr. Vega failed to timely challenge his 1998 removal order and he now cannot bootstrap his appeal of that decision to his appeal of the 2014 reinstatement order. If the court finds jurisdiction, because Mr. Vega failed to establish a gross miscarriage of justice to enable him to collaterally attack his previously executed order of removal. For the reasons discussed today in the answering brief, the court should dismiss or alternatively deny the petition for review. Thank you. Thank you very much. Mr. Powell, let's have three minutes on the clock, please. Thank you. If I can make a point first about the failure to raise this issue of the expungement prior to the deportation. This is, again, on all fours with the Farinas case that I described before. In that case, similarly, there were subsequent developments after the order of deportation and prior to deportation. Farinas did not raise that issue at all. He didn't file a motion to reopen or do anything else to notify the board. Nevertheless, when he was deported, the board considered that a deportation that did not have a legal basis. Sixteen years later, the board said that that order cannot be held against him, cannot be reinstated. In fact, the board 16 years later reinstated his permanent resident status that he had prior to the deportation proceedings. That board decision, Farinas, it's a precedent decision. So binding on immigration officers, that should be followed when they are involved in their reinstatement decisions. Well, how does your client establish a gross miscarriage of justice? The gross miscarriage of justice, I think, Farinas makes clear that if you're deported, when the order of deportation no longer is legally effective, I think the board says lacks a legal basis, then there's a gross miscarriage of justice. Those are old cases, but that's what they say. Yes, and we think those are still binding on the reinstatement officers. A point about the administrative file that was before the reinstatement officer, the alien file. I'd point out there was the prior motion to reopen that was denied, did go up to the board, did go up to the Ninth Circuit, came up to this court, and that was about the same time. In March of 2014, the agency created an administrative record that it gave to the court in the prior case. The administrative record that was created there did include evidence of the reinstatement. So that administrative record at that time, March of 2014, that's a month after the reinstatement occurred. The reinstatement here was February of 2014, though. Right, but those documents were put into the file in November of 2013, so they would have been available to the reinstatement officer in February of 2014 when the reinstatement was done. Thank you. And finally, just the last point about by way of relief. I think if the reinstatement stands, then, of course, he's got no relief. He would be deported, but we think that the reinstatement cannot stand. The case needs to be processed for a hearing in front of an immigration court. At that point, he does have relief. He certainly has what's called- How's the misprison of felony going to affect this? Yeah, I do not believe misprison of felony is a crime of moral turpitude, but even assuming that it is, he would be eligible for a waiver. There's a waiver under 8 U.S.C. Section 1182H. A discretionary waiver. I'm sorry? Discretionary. A discretionary waiver. That's correct. And he would be able to pursue the application. So he filed an application for adjustment of status prior to the new reinstatement rules in March of 1997. That decision, that application has never been decided. So where is your client right now? Right now he's in, I believe, in the Tri-Cities area. Detained? He's not detained. Well, if you wait around, sooner or later CIMTs can be held unconstitutional, but that may be a long wait. Yeah, if we wait 30 years. I might not still be here, though. In any event, he's eligible for adjustment of status and would be eligible for the waiver. Okay. Thank both sides for their helpful arguments. Thank you.
judges: W. Fletcher, Callahan, Christen